UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

M.M.,

                      **Plaintiff,**

    v.                                            **5:17-CV-1201**
                                                      **(TJM/DEP)**

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I. INTRODUCTION**

    Plaintiff M.M., acting *pro se*, brought this action pursuant to 42 U.S.C. § 405(g) to review a final determination by the Commissioner of Social Security that denied his application for benefits. The issue in this case is whether substantial evidence in the record supports Administrative Law Judge ("ALJ") Elizabeth Ebner's determination that Plaintiff is not disabled.

**I.    PROCEDURAL HISTORY**

    On October 29, 2014, Plaintiff filed a Title II application for disability and disability insurance benefits as well as a Title XVI application for SSI benefits. Social Security Administrative Record ("R."), dkt # 12, at 165-66. A disability examiner and physician made the initial determination that Plaintiff was not disabled on December 15, 2014. Id. at 92-97. Plaintiff filed a timely request for a hearing on January 20, 2015. Id. at 102-03.

1

ALJ Elizabeth Ebner presided over a video hearing on September 13, 2016. See Id. at 125. The ALJ issued an unfavorable decision on December 28, 2016, which Plaintiff appealed. The Social Security Appeals Council denied his appeal on August 29, 2017. Id. at 10, 162. This action followed.

Plaintiff proceeds under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the Commissioner's final decision.

## II. FACTS

Plaintiff originally filed his claim for disability due to osteoarthritis in his feet, right hand, and left toes, as well as high blood pressure, depression, anxiety, and an enlarged prostate. Id. at 16-17, 20. He alleged these conditions had prevented him from working since September 1, 2011. Id. at 13. After retiring from a Rochester school district in 2001, Plaintiff worked various sales jobs. Id. at 49-52. These positions required different degrees of standing and lifting. Id. After a brief stint as a waiter, Plaintiff began working another sales job that allowed him to remain seated and did not require lifting. Id. at 51-52. He lost this job when the company went out of business. Id. at 52. Plaintiff was employed at a restaurant cleaning the parking lot and doing minor maintenance at the time of his hearing before the ALJ. Id. at 53-54. Plaintiff alleges his medical conditions make him unable to work more than two to four hours a day for an average of fifteen hours per week. Id. at 54. He walks approximately 100 yards to get to work. Id. at 64. Plaintiff objects to an examining physician's determination that he has "no restrictions" on his ability to work. Id. at 58-61. At the hearing before the ALJ, Plaintiff claimed that "excruciating pain" would keep him from performing even a sedentary job full time. Id. at 65.

2

Rena Serkin, a vocational expert, testified before the ALJ that a hypothetical individual with the same residual functional capacity the ALJ assigned to Plaintiff–limited to "the medium range" of physical exertion–could perform any of Plaintiff's previous sales jobs. Id. at 68. The expert further testified that, even if limited to "the light range," Plaintiff would be able to perform his "inside sales" and "tile sales" jobs. Id. The expert further testified that, using the "light" limitation, an individual could work as a mail clerk, small product assembler, or price marker. Id. at 69. Such positions, the vocational expert testified, are nationally availablel. Id. The vocational expert also testified that, even limited to only sedentary work, an individual with Plaintiff's limitations could still perform Plaintiff's prior inside sales job or other nationally available work. Id. The vocational expert also testified that if Plaintiff had limitations that left him unable to remain on task thirty percent of the time, he would not be employable. Id. at 70. Similarly, the vocational expert concluded that if Plaintiff had pain and numbness so severe in his right foot that he could work only two hours at a time, he would be unemployable. Id. at 71.

### III.     THE COMMISSIONER'S DECISION

The ALJ completed a five-part evaluation to determine whether Plaintiff qualified for disability and SSI benefits, as required by 20 CFR 404.1520(a) and 416.920(a). Id. at 11-20. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2011, the alleged onset date. Id. at 12. Next, the ALJ found that Plaintiff had the severe impairments of "right foot pain, osteoarthritis, lower back pain, high blood pressure, and hallux valgus." Id. at 13. The ALJ also found that Plaintiff's "bronchitis, hypertension, and anxiety . . . caused not more than a minimal degree of limitation in [his] ability to work." Id. The ALJ focused on Plaintiff's physical ailments,

3

finding his alleged mental health impairments "non-severe." Id.

At the third stage of the evaluation, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in the Social Security regulations. Id. at 14. The ALJ found that Plaintiff's disability could not be established as a "disorder[] of the spine" or as a musculoskeletal or cardiovascular disability within the language of the regulations. Id.

Next, the ALJ determined that Plaintiff had the residual functional capacity "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with some exceptions. Id. at 15. Plaintiff, the ALJ concluded, could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. Id. Plaintiff was unable to climb ladders, ropes, or scaffolds and could not be exposed to unprotected heights or dangerous moving mechanical parts. Id. Additionally, Plaintiff would be "off task" five percent of an eight-hour workday. Id.

The ALJ also evaluated the medical evidence of record and Plaintiff's testimony from the hearing. Id. at 15-18. Plaintiff had testified that he could not work full-time, primarily due to his osteoarthritis. Id. at 16. While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's claims regarding the intensity, persistence and limiting effects of the symptoms were not consistent with the evidence. Id. Plaintiff's reported osteoarthritis was consistent with the medical record, the ALJ found, but that record was limited. Id. at 18. "Except for the consultative examination, there are very few treatment notes by his providers." Id. The evidence failed to show consistent treatment for Plaintiff's foot pain and there were no treatment records for his alleged urinary infrequency. Id. The ALJ

4

found Plaintiff's testimony at the hearing inconsistent with the severity of his symptoms. Id. Plaintiff testified that he had been working every day for the past three years, sometimes in the rain. Id. He also lifted a maximum of twenty pounds at this job and walked approximately 100 yards to work and back home. Id.

The fourth step in the evaluation process required the ALJ to determine if Plaintiff could still perform his past relevant work in light of his residual functional capacity. See Id. at 18-20. The ALJ found Plaintiff capable of performing his past relevant work in "tile sales" and "indoor sales." Id. at 18. Plaintiff had previously worked in "auto sales" and "tile sales," both "light" jobs. Id. Plaintiff also had worked in the "sedentary" job of "inside sales" and the "medium" job of "maintenance." Id. The ALJ relied on the statements of a vocational expert who testified that, considering his residual functional capacity, Plaintiff could work in "tile sales" or "inside sales." Id. at 19. The expert further testified that, even limited to "light work," Plaintiff would be able to work as a mail clerk, small production assembler, or price marker. Id. at 20. All three of these positions are available in the national economy. Id. This testimony allowed the ALJ to determine that "considering the claimant's age, education, work experience, and residual functional capacity," Plaintiff could make "a successful adjustment to other work that exists in significant numbers in the national economy." Id. For that reason, the ALJ issued a finding of "not disabled."

## IV. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d

Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.") (citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997) (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting

Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**V.     DISCUSSION**

In his *pro se* complaint and brief, Plaintiff offers no specific grounds for challenging the ALJ's opinion.  See Pl.'s Br. at 1.  Plaintiff merely references the documents he previously submitted to the ALJ and reasserts that he is incapable of being on his feet for more than ten to twenty hours per week.  Id.  This Court, however, must construe *pro se* filings liberally, which are "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  The Court must here determine whether substantial evidence supports the ALJ's decision that Plaintiff is not disabled, employing this generous standard. The Court finds, given the generalized nature of Plaintiff's challenge and his *pro se* status, that the best means of analyzing his appeal is to determine whether substantial evidence supports the ALJ's findings at each stage of the required analysis.

In analyzing Plaintiff's claim, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since September 1, 2011.  R. at 12.  The ALJ considered Plaintiff's current employment at Delmonico's Steak House and concluded that his reported earnings were not indicative of substantial gainful activity.  Id. at 13.  Plaintiff does not refute this conclusion; he provided recent pay stubs to "show [the Court] I'm living under the poverty level."  Pl.'s Br. at 1.  It is therefore uncontested that substantial evidence supports the ALJ's finding at the first step of her analysis.

At the second stage of the disability analysis, the ALJ found that Plaintiff had the severe impairments of "right foot pain, osteoarthritis, lower back pain, high blood pressure,

7

and hallux valgus." R. at 13. The ALJ determined that the remaining ailments that Plaintiff complained of were "non-severe." Id. at 13-14. Plaintiff's brief does not challenge these findings. See Pl's Br. at 1. He alleges "problems in [his] feet" that limit his ability to work. Id. The ALJ accepted as severe all claims of foot pain. R. at 13. Additionally, substantial evidence supported the ALJ's conclusion that the other ailments were not severe. Id. The ALJ weighed the differing diagnoses of Plaintiff's impairments against the other available evidence and properly gave more weight to conclusions supported by the record as a whole than to any individual, subjective claim. Id.

At step three, the ALJ was required to compare the impairments identified in the prior step to the impairments enumerated in the Social Security regulations. As above, Plaintiff offers no specific challenges to this determination. See Pl.'s Br. at 1. The ALJ reviewed the record evidence and concluded that Plaintiff's impairments did not establish disability under the statutory category "disorders of the spine." R. at 14. No evidence in the record showed "significant neurological abnormalities" or "arachnoiditis or stenosis with claudication and other manifestations." Id. The ALJ further compared Plaintiff's foot impairments to other listings for musculoskeletal issues but found no match. Id. Finally, the ALJ considered the cardiovascular listings, but found that Plaintiff's high blood pressure was not significantly limiting to satisfy that category either. Id. There is no record evidence to suggest that Plaintiff's ailments should have been compared to other categories within the Social Security regulations nor does Plaintiff suggest any other categories in his brief. Substantial evidence supports the ALJ's conclusion at the third step of her evaluation.

The ALJ next determined that Plaintiff had the residual functional capacity to

8

perform "light work," with some limitations on movement.  R. at 15.  Plaintiff's brief reasserts his claim that his foot impairment prevents him from standing for more than a few hours every day.  Pl.'s Br. at 1.  The ALJ found "severe impairments that cause functional limitations" but disagreed that Plaintiff was incapable of working.  R. at 17-18.  As the medical records contained very few treatment notes, the ALJ did not give significant weight to the primarily consultative examinations.  Id. at 18.  Plaintiff's testimony regarding his current job obligations, however, contradicted his claim that he could not work full time.  Id.  The ALJ, giving Plaintiff the benefit of the doubt, concluded that he was limited to light work.  Id.  The ALJ also considered Plaintiff's alleged urinary problems and found he would be off task five percent of the workday, despite a lack of evidence in the record.  Id. at 17.  Evidence indicates that Plaintiff continues to perform work at the steakhouse consistent with this determination.  The ALJ additionally factored in some limitations that had only minor evidentiary support, such as time off task for Plaintiff's urinary condition and limitations on movement.  Substantial evidence therefore supports the ALJ's conclusion that Plaintiff retained the residual functional capacity for light work.

For the final two steps of the disability analysis, the ALJ relied on the testimony of a vocational expert.  Id. at 18-20.  The expert answered hypothetical questions regarding the work available to someone with Plaintiff's residual functional capacity.  Id.  An ALJ may rely on such testimony as long as the assumptions that it is based upon are supported by substantial record evidence.  See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014); Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983).  As addressed above, substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity.  Based on this finding, the vocational expert testified that Plaintiff could perform

his past relevant work in "tile sales" or "inside sales." R. at 19. Plaintiff here makes no claims regarding his ability to perform either of these past jobs. The ALJ had substantial evidence to conclude that Plaintiff is not disabled because he has the residual functional capacity to do his past relevant work. 20 C.F.R. § 404.1560(b)(3).

The ALJ next found that jobs exist in the national economy that Plaintiff could perform based on his residual functional capacity. R. at 19. This was the final step in the ALJ's review. The ALJ based this determination on the vocational expert's testimony that someone with Plaintiff's limitations could work as a mail clerk, small production assembler, or a price marker. Id. at 19-20. Plaintiff does not challenge the conclusion that he is able to perform these or other similar jobs. The vocational expert's testimony, based on Plaintiff's residual functional capacity, provides substantial evidence for the conclusion that Plaintiff is able to perform work that is available in the national economy. In the end, The ALJ had substantial evidence to find that Plaintiff is not disabled. The testimony of the vocational expert supported the conclusion that Plaintiff had the residual functional capacity to perform his past relevant work or to find other work that available in the national economy.

## VI. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for judgment on the pleadings is hereby **DENIED**. The government's motion for judgment on the pleadings is hereby **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

**IT IS SO ORDERED.**

**DATED:** February 8, 2019

Thomas J. McAvoy
Senior, U.S. District Judge